## CAROLINA, CUMBERLAND GAP & CHICAGO RAILWAY CO. *v.* SEIGLER.

### SAME *v.* HENDERSON.

1. A subscription in writing being made to the capital stock of a railroad company, "provided that the line of said road run on the east side of Shaw's Creek," oral testimony is inadmissible to show the meaning of the paper; the words of the proviso not being susceptible of a double signification, nor shown to be applicable to more than one subject. The rule of evidence involved considered generally.

2. Evidence of the location of defendant's lands, if intended to show that the subscription was made with the understanding that the road was to run by these lands, was incompetent because it added terms to the written paper; and if not so intended, was irrelevant.

3. For the same reason evidence of the location of lands through which the defendants and others had given a right of way, and of the nature of the country through which one of the surveys ran, was improper.

4. The complaint having alleged a payment by defendant on his subscription, and plaintiff having given in evidence its president's version of what was then said in reference to the terms of the subscription, defendant may then be permitted to testify his version of this same transaction.

5. Evidence that no work had been done towards grading the road was relevant to the issue of location.

6. Declarations of the president of the company at the time of a part payment by defendant on his subscription, may be proved to explain the payment, but cannot be used to affect the written paper of subscription.

7. A single sentence of the charge, susceptible when detached of a meaning different from that which it has when considered in connection with the context, must be given the latter meaning.

Before WITHERSPOON, J., Aiken, April, 1884.

In this case Mr. Justice McGowan, having an interest in the plaintiff corporation, declined to sit. The other two justices heard and decided the case. The opinion sufficiently states the case.

*Messrs. Aldrich & Ashley, Croft & Dunlap*, for appellant.

*Messrs. Henderson Bros.*, contra.

January 5, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The defendants in the above cases became subscribers to the stock of the Edgefield, Trenton & Aiken Railroad Company to the amount of five hundred dollars ($500) each, by signing a paper, of which the following is a copy: "We, the undersigned, citizens of Aiken and Edgefield Counties, agree to subscribe the amounts set opposite our names to the stock of the Edgefield, Trenton & Aiken Railroad (to be paid either in cash or work), provided that the line of said road run on the east side of Shaw's Creek;" the defendants with others having subscribed said paper, with $500 set opposite their names respectively. This paper passed into the hands of the plaintiff, after the consolidation of the Edgefield, Trenton & Aiken Company, first into the French Broad and Atlantic Railway Company, and

then into the plaintiff company. After which the actions below were brought on said subscription.

The complaint of plaintiff alleged that the terms of the subscription had been fully complied with by the previous companies and the plaintiff, and that although the amount subscribed had become due and payable when the line of said road was run and located on the east side of Shaw's Creek, and that defendants had been requested to pay their subscriptions, upon which payment stock would be issued, yet that defendants had neglected and refused to pay the same, except that defendant, Seigler, had paid the sum of one hundred and fifty dollars; wherefore the plaintiff prayed judgment in the case against Seigler for the sum of three hundred and fifty dollars, and in the case against Henderson for the sum of five hundred dollars, and for costs and disbursements.

The answer of Seigler admitted the execution of the paper in suit, also the merger and consolidation of the railroad companies as set forth in the complaint, and relied principally upon a defence, that when he signed the paper, he was induced to believe by the parties who circulated said paper that the line of the Edgefield, Trenton & Aiken Railroad would run on the east side of Shaw's Creek to, or near to, the Steedman & Weeks mill on said Shaw's Creek, which was partly owned by this defendant, which it was alleged had not been done, and that it was upon this representation alone that defendant signed said paper. He also set up a counter-claim for the repayment of the one hundred and fifty dollars paid by him on his subscription, on the ground that when he paid the same, it was upon the express and renewed promise of the president of the company, Mr. Lewis Jones, that the line of said road was to run on the east side of Shaw's Creek to, or near to, the Steedman & Weeks mill, &c.

The complaint in the case against Henderson is a copy of the complaint against Seigler, except that there is no payment alleged on the $500 subscription; and the answer of Henderson is a copy of Seigler's answer, except that no counter-claim is set up.

At the trial certain evidence was introduced by the defendants, to be more particularly noticed' hereafter, which constitutes the grounds of appeal here, with an exception also to a portion of the charge of his honor, the presiding judge. The verdict having

been rendered for said defendants, the following are the grounds of plaintiff's appeal:

That his honor erred in overruling plaintiff's objection to the defendants introducing evidence to show:

I. Where the land of defendants and others, who signed the subscription paper, the cause of action, was situated in reference to the railroad, as located and graded on the east side of Shaw's Creek.

II. In allowing evidence as to what the defendant, A. S. Seigler, said was his understanding of the meaning of the subscription paper at the time he made the payment thereon. Also, in allowing evidence as to what Seigler said at the time of said payment to the president of the railroad company, and as to statements and promises alleged to have been made by Lewis Jones, as such president, made at the time of said payment, as to what the railway company had done and would do.

III. In allowing defendants to introduce evidence to show that since the consolidation of the said railway company into the plaintiff's corporation no work had been done by plaintiff toward grading of the road-beds.

IV. In allowing the defendants to introduce evidence to show when and where certain experimental lines were run by surveyors under their direction and at their request.

V. To show location of the lands through which A. S. Seigler and others gave the right of way.

VI. As to the declarations of Lewis Jones as to his views, as to where the said road should run, his reasons sustaining his views, and effect it would have upon the road and adjacent land owners.

VII. As to assurances of Lewis Jones made after the subscription paper was executed and delivered to the Edgefield, Trenton & Aiken Railroad Company as to where the road would be located.

VIII. Evidence to show the nature of the country through which the Gardner survey was made.

IX. In allowing Augustus Cochran to testify as to the declarations of Lewis Jones, made to him while at work upon the road as an employee of the company, in regard to locating the line of the road by Seigler's mill.

X. That his honor erred in charging the jury, "That the acceptance of the paper and adoption of the line of road should have been in a formal writing, or some formal manner."

It is a general rule of evidence, long since established and now well settled, that parol testimony cannot be introduced to vary, add to, or alter a written instrument, which in itself is plain and free from doubt. The parties themselves having reduced their contract to writing, they are supposed to have done so in part, at least, with the view to exclude everything else but the writing itself in determining their contract, which writing must be interpreted by the court according to certain well established rules not necessary to be here considered. This rule, it will be observed, is directed only against the admission of any other evidence of the language employed by the parties in making the contract, than that which is furnished by the writing itself. 1 *Greenl. Evid.*, § 277. It, therefore, does not prevent the writing from being read in the light of surrounding circumstances, if need be, in order the more perfectly to understand the intent and meaning of the parties. The writing, however, being the act and instrument of the parties finally and solemnly agreed upon, no other words than those found therein can be added to it or substituted in its stead by oral testimony. Nor can oral testimony of a previous colloquium, or of conversation or declarations at the time when completed, or afterwards, be offered to explain it. On the contrary, the instrument must stand upon its own terms.

In looking at the terms of an instrument, however, doubts may arise, first, as to the proper signification to be given to the words used, and, second, as to the application of the instrument to external objects. An example of the first class of cases is where the words used are susceptible of a double signification, having a plain and ordinary meaning when used generally, and yet a technical meaning when used with reference to particular trades or branches of business. An example of the second is where the language of the instrument is applicable to two or more subjects or objects, raising a latent ambiguity, and therefore necessitating an inquiry *de hors* the instrument for a subject-matter to satisfy said instrument. In both of these classes of cases, under certain rules and restrictions, oral testimony is admissible, of the sur-

rounding circumstances, including the situation of the parties and their relations to persons and things around them, with the view to enable the court, called upon to interpret the paper, to reach its true meaning and intent; and this, as is said by Mr. Greenleaf (Vol. 1, § 288), without any infringement of the general rule, stated above, that parol testimony is inadmissible to vary, add to, or contradict a written instrument, that rule being confined to the exclusion only of all parol testimony of any other language, showing the meaning of the parties, than that used in the instrument itself.

In other words, the effect of the rule is, that while the court, in endeavoring to reach the true meaning and intent of an instrument before it, is confined to the terms used, excluding all testimony intended to add to, omit, vary, or contradict said terms, yet where the terms are doubtful in either of the senses referred to above, then oral testimony—not of the understanding of the parties, one or more, or of their declarations or conversations at the time or afterwards in reference thereto, but of the facts and circumstances surrounding them and connected with the transaction—may be admitted, so that the contract may be read in the light of such surrounding circumstances. There are some other cases, too, mentioned by Chancellor Wigram in his seven propositions found in that admirable treatise of his on the interpretation of wills, where, under certain circumstances, oral testimony is allowed bearing upon a written paper; but they have no application here, and therefore need not be considered.

Now, let the exceptions in this case, as to the evidence admitted below, be tested by the above principles. In the first place, are the terms employed in the instrument in suit doubtful in either of the senses mentioned above, and therefore requiring the admission of oral testimony as to matters *de hors* said instrument to remove said doubt? The terms are contained in the proviso, and are as follows: "Provided, that the line of said road run on the east side of Shaw's Creek." Are these words susceptible of a double signification, or can it be claimed that they are applicable to more than one subject? Not so. The words are plain, and have but one meaning, and there is no claim that there are two creeks named Shaw's, requiring evidence outside of

the paper showing which was meant and where a line on the east side should run. There was no room, then, for the admissibility of oral testimony to clear away the doubts mentioned, as no such doubts existed, or could exist in a paper so plain and unambiguous.

The first exception complains that his honor erred in admitting testimony by the defendants to show where the lands of defendants lay with reference to the line of the road located on the east of Shaw's Creek. What was the object of this testimony? Was it not to show that defendants subscribed with the understanding that the road was to run not only on the east side of this creek, but to, or near to, these lands? If this was not its object, it was entirely irrelevant, and therefore inadmissible; and if this was its object, did it not tend to add other words to the instrument than those found therein? It is urged by respondent, however, that this exception cannot be considered, because the evidence referred to was admitted without objection below. But appellant claims that he did object, and he refers to the folio in the "Case" where his objection appears, especially folios 62 and 152. On examination of these folios, an objection is found entered. True, the precise point raised is not very distinctly made, but yet there is enough stated, we think, to sustain appellant that objection was made to the introduction of the testimony in question.

Exceptions 4, 5, and 8 object to the evidence showing that certain experimental lines had been run under the direction and at the request of the defendants; also the location of the lands through which defendant Seigler and others had given the right of way; and also the nature of the country through which the Gardner survey was made. That in reference to the experimental lines was abandoned, because no objection was interposed at the trial. The other two, however, have been insisted upon, and we think the objection to these must be sustained on the same ground as the first exception discussed above. We can see no purpose for the introduction of this testimony but to sustain defendant's allegation in his answer that the line of the road, as he understood, was to run not only on the east side of Shaw's Creek, but to, or near to, his property, the Steedman & Weeks

mill.   This was the main defence relied on by the defendant, and this in effect was claiming that the paper in suit needed additional terms than those found therein to show the contract of the parties; and the evidence objected to must have been intended to supply these terms, which is the very thing the rule of evidence referred to above absolutely forbids.   If this testimony was not intended to have the effect suggested, and therefore incompetent, then it was wholly irrelevant, having no application whatever to the case, and on that account incompetent.   Upon the whole, we may say that the main question before the court as to the paper in suit being its interpretation and construction, and that paper being plain and unambiguous in terms, both as to the meaning of the words employed therein and as to their application, it was incompetent to admit any oral testimony intended to aid in said interpretation, the rule being in such cases that the paper alone must govern.

Exception 2 raises a question of competency as to what defendant "Seigler said was his understanding of the meaning of the subscription at the time he made the alleged payment thereon, also in allowing evidence as to what he (Seigler) said to the president of the road at that time, and as to what the president then said as to what the railroad company would do or had done."   A payment by Seigler was alleged in the complaint.   It seems that this payment was made to Mr. Lewis Jones, the president, and in his testimony for the plaintiff he was allowed to state the facts connected therewith.   The testimony of the defendant objected to in the above exception seems to have been in reply to this testimony of Jones, in which the defendant gave his version of what occurred at this payment as a part of this transaction; and in reply, we think it was competent.

Exception 3 objects to testimony tending to show that no work had been done by the plaintiff toward grading the road.   One of the questions in the case was whether the line had been permanently located.   The testimony objected to, it seems to us, was pertinent to that issue and therefore competent.

Exceptions 6 and 7 object to certain declarations of Mr. Jones, the president of the company.   These declarations were brought out in the testimony of the defendant Seigler, and were made, as

he testified, in connection with the payment by him on his subscription. As a part of that transaction, and explanatory thereof, they were competent. They could not, however, affect the original paper or be used in any way in the interpretation of said paper.

Exception 9 seems to have been founded upon a misconception as to Cochran's testimony. We have not found in the case any evidence from him in which the declarations of Jones were stated as to the location of the line of the road by Seigler's mill. On the contrary, such declarations seem to have been expressly excluded.

The tenth exception is founded upon a single sentence or expression in the charge of the judge, which, standing alone, might possibly be objectionable, to wit: "That the acceptance of the paper and adoption of the line of road should have been in a formal writing or some formal way." When this sentence, however, is considered in connection with other portions of the charge and with the whole charge, in which, after explaining what was meant by acceptance and what by location of the line, he left both on this matter to the jury as questions of fact, we cannot say that this sentence should be regarded as error.

Certainly so much of the testimony as was admitted in the case of Seigler, in connection with the payment by him on his subscription, was incompetent in the case of Henderson, as he, Henderson, had made no payment on his subscription, nor had any conversation with Mr. Jones on this subject.

It is the judgment of this court that the judgment below, in both cases, be reversed on the ground of the incompetent testimony herein above mentioned, and that the case be remanded for a new trial.